Keith D. Nowak
Andriy R. Pazuniak
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
(212) 732-3200
nowak@clm.com
pazuniak@clm.com

Alexander E. Gertsburg
Broadvox Holding Company, LLC / Cypress Communications Operating Company, LLC
75 Erieview Plaza, Suite 400
Cleveland, Ohio 44114
(216) 373-4811
agertsburg@broadvox.com

*Attorneys for Defendants Broadvox Holding Company, LLC and
Cypress Communications Operating Company, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RATES TECHNOLOGY INC., <br><br>       Plaintiff, <br><br> -against- <br><br> BROADVOX HOLDING COMPANY, LLC, CYPRESS COMMUNICATIONS OPERATING COMPANY, LLC and ABC COMPANIES, 1 TO 10, <br><br>       Defendants. | Case No. 1:13-cv-00152 (LTS) (SN) |

---

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO ORDER DEFENDANTS TO FILE DOCUMENTS UNDER SEAL

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005
(212) 732-3200

7158782.3

Defendants Broadvox Holding Company, LLC ("Broadvox") and Cypress Communications Operating Company, LLC ("Cypress") had advised Plaintiff Rates Technology Inc. ("RTI") in "meet and confer" discussions that Defendants will be submitting one or more motions to the Court that include references to statements made by Plaintiff RTI's president, Gerald Weinberger, in emails and in a taped (by consent) conversation.

The documents are manifestly relevant to matters before the Court, and, indeed, Plaintiff RTI concedes the point. Moreover, the documents do not contain any proprietary or confidential information that warrant protection. Nevertheless, based upon an untenable "unilateral contract" theory, Plaintiff RTI moves this Court to order Defendants to file under seal "any pre-trial communications" by Mr. Weinberger, because of an alleged unilateral agreement to maintain confidentiality.

Defendants oppose RTI's motion, because (a) even if there was an agreement to maintain confidentiality, the documents do not contain any technical, business or other information that could be deemed protectable under the law; and (b) RTI has not provided any justification for the Court to seal these documents under existing law.

## I. BACKGROUND

### A. No Express Confidentiality Agreement

In early December 2012, Mr. Weinberger first contacted Broadvox with threats to file a patent infringement suit unless Broadvox paid RTI hundreds of thousands of dollars as a "licensing" fee. Broadvox, through its general counsel, asked Mr. Weinberger for the basis of his claims that Broadvox infringed RTI's patents. What followed throughout the next month was a lengthy email chain which is relevant to the allegations of patent infringement and related issues that will be placed before the Court.

1

The parties agree that (1) Mr. Weinberger sent emails with the word "Confidential" in the subject line, and (2) Mr. Gertsberg responded with emails that had the purported confidentiality designation removed. RTI never said that this meant the documents and communications were not to be disclosed openly in the Court records, and Broadvox never viewed this as such an agreement.

### B. The Documents Are Not Confidential

Whether or not the parties had agreed as to confidentiality, which Defendants deny, RTI has not attempted to demonstrate that any of the communications that RTI wants to have the Court seal actually contain any confidential information. In fact, the communications do not disclose any technical or business information, and were not even settlement discussions. The communications are nothing more than demands by Mr. Weinberger that Defendants pay him money or face bankruptcy, coupled with his misrepresentations as to the content of his patent claims. Such communications by Mr. Weinberger and RTI, however, are already public information.

Thus, just recently, another company filed a declaratory judgment complaint in this District Court alleging that

> 4. Defendant RTI is known as a patent "troll" . . . , RTI has targeted participants in virtually all sectors of the telecommunications industry with its patents, based on a business model that entails motivating targets to pay regardless of whether they infringe simply to avoid the cost of patent litigation.

The Plaintiff in that suit seeks

> 6. ...[T]o cause RTI to cease and desist its aggressive and baseless campaign to use its nearly-expired, narrowly-tailored patents to extract exorbitant and unwarranted payments from Viber. RTI's repeated threats to sue Viber for patent infringement - despite the fact that Viber clearly has not and does not infringe- continue to put Viber under a reasonable and serious apprehension of imminent suit.

(Pazuniak Decl., Ex. A.)

The letter attached as exhibit C to the above complaint already exposes the same communications that RTI is attempting to keep from the public eye here. Thus, in that public document, Mr. Weinberger wrote without any request for confidentiality:

> Apart from the unrecoverable high cost of your patent infringement litigation defense, and your significant risk of loss greater than $30 million, you summarily ignore the fact that more than 375 telecommunications companies with similar or identical functionaries have already been covered under the RTI '085 and '769 patents. You also ignore the fact that many and most of your competitors whose functionalities are identical to those of your company, are already covered under the '085 and '769 patents. Your competitors chose to resolve their patent infringement matters amicably whilst you persist cavalierly to essentially ignore RTI and its patent infringement allegations.
>
> We will wait only a short additional period of time prior to our filing our lawsuit, and we advise you to carefully {sic} consider that once filed RTI will proceed inexorably only to a final adjudication to obtain all of its requested remedies, on the merits.
>
> Please govern your actions accordingly.

(Pazuniak Decl., Ex. A at Ex. C to the complaint.)

This is only the most recent publication of Mr. Weinberger's and RTI's conduct. But there have been such publications for many years. Thus, the public record also shows that another party in 2007 demonstrated that in that case, and in prior cases, Mr. Weinberger and RTI attempted to obtain money from parties to avoid costs of litigation where RTI had no basis for asserting infringement. The public document discloses:

> RTI's actions in this case are consistent with a pattern of "bad faith" litigation against companies in the telecommunications industry. To Primus's knowledge, RTI's business since at least 1997 has been suing a succession of at least twenty other companies from disparate areas of the telecommunications industry. At least three other such cases remain pending, only one has ever proceeded to a Markman hearing (which was thereafter dismissed by stipulation), and virtually all others were dismissed before any significant hearings, summary judgment, or trials could occur. At least three cases were dismissed with prejudice on RTI's own motion. The dockets from these cases reveal a pattern of litigation conduct by RTI paralleling its conduct in this case.

3

> In *Open LCR com*, for example, OpenLCR filed suit as a declaratory judgment plaintiff alleging that RTI had engaged in a pattern of conduct strikingly similar to RTI's behavior toward Primus in this case. As the Court described it:
>
>> RTI, through Weinberger, sent at least eight demand letters and made over fifty telephone calls to OpenLCR in Colorado. Throughout an approximately six-month period, Weinberger refused any discussion regarding the validity of the RTI patents, apparently preferring to focus his efforts at intimidating OpenLCR with threats of litigation in order to convince OpenLCR that is was in their best interest to sign a license agreement ... Weinberger told OpenLCR that even if OpenLCR's technology did not infringe on the RTI Patents, "RTI still had a 20% chance of winning in court ... and that OpenLCR should simply make a business decision to enter a license agreement with RTI to avoid a costly litigation in New York."
>
> 112 F. Supp. 2d at 1227-28. Considering this set of facts, the Court found that Open-LCR had made a "threshold showing of <u>bad faith</u> on evidence that RTI persisted with t11Ieats of litigation while disregarding any possibility that Open-LCR's technology does not infringe RTI's patents" 112 F. Supp. 2d at 1228 (emphasis supplied).

(Pazuniak Decl., Ex. B at pp. 4-5)

In fact, numerous courts have already opined that Mr. Weinberger and RTI have engaged in "intimidation" and acted in "bad-faith." See *Openlcr.com, Inc. v. Rates Tech. Inc.*, 112 F. Supp. 2d 1223, 1227-28 (D. Colo. 2000) ("Throughout an approximately six-month period, Weinberger refused any discussion regarding the validity of the RTI Patents, apparently preferring to focus his efforts at **intimidating** OpenLCR with threats of litigation in order to convince OpenLCR that it was in their best interest to sign a license agreement. . . . In this case, the Court finds that Plaintiffs have made a threshold showing of **bad faith** on evidence that RTI persisted with threats of litigation while disregarding any possibility that Open-LCR's technology does not infringe RTI's patents.") (emphases added).

In *Alcatel Internetworking, Inc. v. RTI*, there is a public record of the Court first sanctioning RTI for discovery abuse designed to drive up the cost of litigation, in which the Court publicly stated that Mr. Weinberger and RTI have "already [] wasted enough of the Court's

4

time with [its] frivolous motions and may not file any other motions for reconsideration of this issue without leave of Court." (Pazuniak Decl., Ex. C.) In that case, RTI refused to produce its prior settlement agreements, and, after years of litigation, dismissed its case with prejudice rather than produce those highly critical documents.

In 2007, Magistrate Judge A. Kathleen Tomlinson of the Eastern District of New York reflected on RTI's "ongoing history of noncompliance here [that] borders on a finding that such action is willful" in *Rates Technology Inc. v Mediatrix Telcom, Inc.*, No. Cv 05-2755 (JS) (AKT) (E.D.N.Y. Sept. 5, 2007). (Pazuniak Decl., Ex. D.) Despite Judge Tomlinson's repeated warnings and demands that RTI comply with the basic requirement of articulating a basis for alleging infringement (of the same patents as here involved), Mr. Weinberger and RTI failed to do so. In the face of years of misconduct by Mr. Weinberger and RTI, District Judge Joanna Seybert dismissed RTI's case with prejudice and sanctioned RTI:

> Plaintiff's first objection is merely a rehashing of an argument that Plaintiff has asserted for almost four years. Plaintiff offers no evidence showing that its failure to comply with Orders is "substantially justified." Additionally, it is impossible to imagine how Plaintiff's repeated failure to comply with court orders could serve as a basis to establish that an award of expenses would be unjust.

Judge Seybert then ordered both RTI and its counsel to pay the attorney fees and costs, because both acted in bad faith:

> Courts have made sanction awards joint and several when the judge determines that a party and its counsel were equally responsible for the failure to obey orders. Here, the conduct of Plaintiff and its counsel in failing to comply with Orders and provide an adequate basis for infringement was egregious enough to warrant an equal split in costs, with both Plaintiff and Plaintiff's counsel being jointly and severally liable.

(Pazuniak Decl., Ex. E at pp. 14, 17).

Likewise, in *Rates Technology Inc. v. Cablevision Systems Corp.*, the Eastern District of New York, on three separate occasions, ordered RTI to produce its prior settlement agreements,

5

which RTI ignored. The Court dismissed RTI's case with prejudice and awarded fees to Cablevision, stating

> The record in this case demonstrates Plaintiff [RTI]'s sustained and willful refusal to comply with multiple court orders to produce the agreements at issue based upon Plaintiff's belief that the orders are "flat-out wrong" and "invalid." Such blatant disregard for the rules and procedures of this Court clearly demonstrates willfulness and bad faith. Accordingly, the Court finds that dismissal of Plaintiff's claims with prejudice is warranted under Rule 37.

(Pazuniak Decl., Ex. F at p. 8).

Many more such instances of public reprimands of RTI based on RTI's filing of frivolous litigations in order to intimidate companies into paying moneys to avoid cost of litigation can be found in the public records. Above all, the above public statements by several courts and parties sufficiently demonstrate that the documents that RTI wishes to maintain as sealed and confidential are nothing more than reflections of what is already publicly known about RTI and its tactics.

### C.  No Ethical Violation

RTI alleges "it is particularly egregious that Mr. Gertsburg, an attorney, has apparently taken advantage of RTI's president, a non-lawyer," and violated ethical obligations reflected in ABA Model Rule 4.2. This unfortunate allegation has no basis in fact, and is belied by the record.

First, Rule 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Mr. Weinberger contacted Broadvox and Mr. Gertsburg. Mr. Weinberger never advised Mr. Gertsburg that Mr. Weinberger or RTI had any counsel involved in the matter, much less that there was counsel representing them in the matter. Therefore, Rule 4.2 is inapplicable.

Second, Mr. Weinberger is a veteran litigator, having filed suit in some well-over 100 patent infringement cases over the years, and having been the person negotiating settlements in at least most, if not all, such cases. (*See* Pazuniak Decl., Ex. G.) Therefore, there is no factual or legal basis to allege that Mr. Gertsburg took advantage of Mr. Weinberger.

Third, Mr. Gertsburg repeatedly asked Mr. Weinberger to identify his counsel, and urged Mr. Weinberger to get both parties' counsel on the phone to discuss the merits of RTI's alleged claim. Mr. Weinberger consistently declined Mr. Gertsburg's requests, insisting instead on continuing his threats and vitriolic emails to Broadvox.

## II. ARGUMENT

The misuse of the judicial system is not something that should be viewed as confidential, and certainly cannot be deemed confidential merely because RTI wants to keep its statements relating to patent litigation out of public scrutiny.

The Second Circuit has held that the public has a common law presumptive right of access to judicial documents. Thus, in *Gambale v. Deutsche Bank AG,* 377 F.3d 133 (2d Cir. 2004), the Court stated:

> The public has a common law presumptive right of access to judicial documents, and likely a constitutional one as well. As to the former, we have said:
>
>> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system. . . . As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, per-jury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.
>
> We have observed that, consistent with this rationale for public access, the presumptive right to "public observation" is at its apogee when asserted with respect to documents relating to "matters that directly affect an adjudication."

*Gambale,* 377 F.3d at 140 (internal citations omitted)

More recently, the Second Circuit stated in *Standard Investment Chartered, Inc. v. Financial Industry Regulatory Auth., Ind.*, 347 Fed. Appx. 615 (2d Cir. 2009), that:

> [T]he normal burden upon the proponent of a protective order to establish good cause for protection, is significantly enhanced with respect to "judicial documents," as to which "a common law presumption of access attaches." We have described "judicial documents" as those that are "'relevant to the performance of the judicial function,'" but we have also said that the monitoring of the judicial function is not possible without access to "documents that are used in the performance of Article III functions." . . . Analogizing to the courtroom closure context, we observed that "'[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"

*Id.* at 616-17 (internal citations omitted)

Thus, the proper procedure is for a party who wishes to keep judicial documents sealed must carry the burden of proving that the documents contain its trade secrets or otherwise meet judicial requirements necessary to seal judicial records from public scrutiny. In *Koch v. Greenberg*, No. 07 Civ. 9600, 2012 U.S. Dist. LEXIS 58608 (S.D. N.Y. Apr. 13, 2012), the Court restated the rules for sealing documents:

> At times, at the parties' request, a court may opt to issue a protective order that sets out general categories of information (such as "trade secrets") that are usually considered appropriate for confidentiality protection, and then allow the parties to designate produced documents and deposition testimony as "confidential" based on the parties' good faith belief that the documents and testimony fall within the specified categories. In such a case, the "good cause" showing is temporarily postponed "until a party or intervenor challenges the continued confidential treatment of certain particular documents" or testimony, at which point "the burden of establishing good cause then lies with the party seeking to prevent the disclosure." ..."[T]he party seeking to maintain confidential treatment for the challenged document will have the burden of establishing good cause for the continuation of that treatment.'"

*Koch,* 2012 U.S. Dist. LEXIS 58608, at *5-6 (internal citations omitted).

In this case, the emails exchanged between Mr. Weinberger and Broadvox contain no information of a sensitive or confidential nature, and RTI has utterly failed to even attempt to make any such showing of any need to seal the documents. RTI does not claim that the emails

8

contain proprietary or confidential information (and, even if they did, RTI freely disclosed such information to Broadvox without any prior mutual agreement to keep it confidential). RTI does not point to any "higher value" that would be served by sealing the documents, other than its own interests in shielding from public scrutiny the repeated threats that Mr. Weinberger made against Broadvox.

RTI seems to believe that all it has to do is say that the parties agreed to keep the documents confidential. Even if the parties so agreed, that is irrelevant, because the parties cannot agree what the Court may order to be withheld from the public record. The judicial and constitutional principles underlying the open-record policy of the Courts cannot be circumvented because of an alleged private agreement about what the Court should do.

RTI does not proffer any particular communications by Mr. Weinberger deserving of a protective order much less explain why Mr. Weinberger's need for confidentiality overcomes the presumption of public access to filed materials. RTI's failure to demonstrate the confidential nature of Weinberger's communications is a sufficient basis to deny RTI's motion to seal.

9

7158782.3

### III.  CONCLUSION

In view of the foregoing analysis of fact and law, Broadvox and Cypress oppose RTI's motion to seal.

Dated: New York, New York
       February 19, 2013

Respectfully submitted,

CARTER LEDYARD & MILBURN LLP

By: /s/ Keith Nowak
Keith D. Nowak
Andriy R. Pazuniak
2 Wall Street
New York, New York 10005
(212) 732-3200
nowak@clm.com
pazuniak@clm.com

Alexander E. Gertsburg
Broadvox Holding Company, LLC / Cypress
Communications Operating Company, LLC
75 Erieview Plaza, Suite 400
Cleveland, Ohio 44114
(216) 373-4811
agertsburg@broadvox.com

*Attorneys for Defendants Broadvox Holding Company, LLC and*
*Cypress Communications Operating Company, LLC*