Milton Springut
Tal S. Benschar
Scott Spencer
Springut Law PC
75 Rockefeller Plaza ─ 19th floor
New York, New York 10019
(212) 813 1600

*Counsel for Plaintiff Rates Technology Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RATES TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> BROADVOX HOLDING COMPANY, LLC, CYPRESS COMMUNICATIONS OPERATING COMPANY, LLC and ABC COMPANIES 1 to 10, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 13-152 (LTS)(SN) |

## PLAINTIFF RATES TECHNOLOGY INC.'S
## OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

LAW OF CLAIM CONSTRUCTION.............................................................................. 1

I.   Claim Construction is Factual and Legal ............................................................. 1

II.  Claims Are Construed From the Viewpoint of a Person Having Ordinary Skill in
     the Art ................................................................................................................... 2

III. Limitations Must Not Be Imported Into the Claims ............................................. 3

IV.  35 U.S.C. § 112(f) Only Governs a Term When the Claim Lacks Structure,
     Material, or Acts ................................................................................................... 4

V.   35 U.S.C. § 112(f) Only Requires Structure, Material, or Acts From the
     Specification Sufficient to Perform the Function ................................................. 6

RTI'S CONSTRUCTIONS ........................................................................................... 7

VI.  Claims of the Patents-In-Suit Are Construed As A Degreed Electrical Engineer
     Having Industry Experience in Telephony Interprets Them.................................. 7

VII. Construction of Disputed Terms in Claim 1 of the '085 Patent ........................... 7

     A.   comprising............................................................................................... 7

     B.   device ...................................................................................................... 8

     C.   a housing forming an enclosure and comprising................................... 9

     D.   first jack means for connection to said first telephone....................... 10

     E.   second jack means for connection to said network ............................. 11

     F.   switch means operatively connected to said first jack means for disconnecting
          said first telephone from said network during routing of a telephone call from said
          first telephone...................................................................................... 12

     G.   disconnecting ...................................................................................... 13

     H.   means operatively connected to said switch means for generating a current
          through said switch means to the first telephone corresponding to a current provided
          by said network, when the first telephone is disconnected from said network by said
          switch means ....................................................................................... 13

     I.   means for generating a current .......................................................... 14

     J.   means operatively connected to said switch means for detecting and storing said
          telephone number originating from the first telephone....................... 14

     K.   means for addressing said database means for identifying a plurality of
          communication switch paths to said second telephone and the cost rate of each path
          15

L.   means actuated subsequent to the detection of said telephone number originating from said first telephone for comparing the cost rate of each path so as to determine a least cost route ...................................................................................... 16

M.   means operatively connected to said switch means and said second jack means for generating a number sequence corresponding to a desired carrier so that said call is routed through said second jack means to the selected communication path and carrier to establish a switched connection between said first telephone and said second telephone phone ..................................................................................... 17

VIII. Construction of Disputed Terms in Claim 1 of the '769 Patent .......................... 18

A.   at a predetermined time and date ..................................................... 18

B.   a data transfer line ........................................................................... 19

C.   call rating device ............................................................................. 19

D.   transmitting over the data transfer line ........................................... 20

E.   indicia identifying the call rating device and the date and time of the last update of the billing rate parameters ......................................................................... 20

F.   verifying if billing rate parameters should be updated ..................................... 21

G.   transmitting from the rate provider to the call rating device ............................ 21

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
  707 F.3d 1318 (Fed. Cir. Feb. 4, 2013) ...................................................................... 9

*Arris Group, Inc. v. British Telecommunications PLC*,
  639 F.3d 1368 (Fed.Cir.2011) ................................................................................... 8

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
  672 F.3d 1335 (Fed. Cir. 2012) ................................................................................ 8

*Atmel Corp. v. Info. Storage Devices, Inc.*,
  198 F.3d 1374 (Fed. Cir. 1999) ................................................................................ 6

*Creo Products, Inc. v. Presstek, Inc.*,
  305 F.3d 1337 (Fed. Cir. 2002) ......................................................................... passim

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) ................................................................................ 7

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
  807 F.2d 955 (Fed. Cir. 1986) .............................................................................. 2, 7

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) ................................... 1

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
  91 F.3d 1580 (Fed. Cir. 1996) ................................................................................. 5

*Kollar, In re*,
  286 F.3d 1326 (Fed.Cir.2002) .................................................................................. 9

*Lighting Ballast Control LLC v. Philips Elec. N. Am. Corp.*,
  500 Fed.Appx. 951 (Fed Cir. Mar. 15, 2013) ............................................................. 1

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
  382 F.3d 1354 (Fed. Cir. 2004) ............................................................................. 4, 5

*LSI Indus., Inc. v. ImagePoint, Inc.*,
  279 F. App'x 964 (Fed. Cir. 2008) ............................................................................ 4

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ................................................................................................ 1

*Masco Corp. v. United States*,
  303 F.3d 1316 (Fed. Cir. 2002) ............................................................................... 5

*MediaCom Corp. v. Rates Tech., Inc.*,
4 F. Supp. 2d 17 (D. Mass. 1998) ........................................................... 1, 4

*MediaCom v. Rates Technology Inc.*,
34 F.Supp.2d 76 (D. Mass. 1998) ............................................................ 12

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
133 F.3d 1473 (Fed. Cir. 1998) ............................................................... 3

*NTP, Inc. v. Research In Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ............................................................... 9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008) ...................................................... passim

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...................................................... 2, 3, 7

*PRT, LLC v. B2 Networks, Inc.*,
2011 WL 7640123 (N.D.N.Y Sept. 1, 2011) .......................................... 2

*Rembrandt v. AOL*,
641 F.3d 1331 (Fed. Cir. 2011) ...................................................... passim

*Robinson v. Cannondale Corp.*,
81 F. App'x 725 (Fed. Cir. 2003) ............................................................ 4

*Roll-Rite, LLC v. Shur-Co, LLC*,
2013 WL 3798101 (E.D. Mich. July 22, 2013) ...................................... 7

*Sage Products, Inc. v. Devon Indus., Inc.*,
126 F.3d 1420, 1427-28 (Fed. Cir. 1997) ........................................ 4, 20

*Schumer v. Lab. Computer Sys., Inc.*,
308 F.3d 1304 (Fed. Cir. 2002) ............................................................... 8

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*,
691 F. Supp. 2d 538 (D. Del. 2010) ........................................................ 6

*TI Grp. Auto. Sys. (N. Am.), Inc. v. NDO N. Am. L.L.C.*,
375 F.3d 1126 (Fed. Cir. 2004) ............................................................... 4

*Trading Technologies Int'l, Inc. v. eSpeed, Inc.*,
595 F.3d 1340 (Fed. Cir. 2010) ............................................................... 3

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997) ...................................................... passim

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
   239 F.3d 1225 (Fed. Cir. 2001) ................................................................... 6

*York Products, Inc. v. Cent. Tractor Farm & Family Ctr.*,
   99 F.3d 1568 (Fed. Cir. 1996) .................................................................... 19

**STATUTES**

35 U.S.C. § 112 ..................................................................................... passim

Plaintiff Rates Technology Inc. ("RTI") provides herein facts and argument supporting its constructions of the disputed terms identified by the parties in the Joint Claims Terms Chart, in accordance with Local Patent Rule 12.

## LAW OF CLAIM CONSTRUCTION

### I.    Claim Construction is Factual and Legal

Under Supreme Court precedent, claim construction involves mixed issues of fact and law. *See Markman v. Westview Instruments, Inc. (Markman II)*, 517 U.S. 370, 390 (1996) ("[T]here is sufficient reason to treat construction of terms of art like many other responsibilities that we cede to a judge in the normal course of trial, notwithstanding its evidentiary underpinnings.")[1] Factual issues exist because, as explained below, the constructions of terms explicitly depend upon the viewpoint of a "person having ordinary skill in the art." To that end, the court may be "aided by expert testimony" and by the "light furnished by [them] relevant to the significance of such words or phrases" that might be "terms of art or science used in letters patent." *Id*. at 387. Indeed, in construing terms in the patents-in-suit, previously, a court explicitly ordered the testimony of an expert. *MediaCom Corp. v. Rates Tech., Inc.*, 4 F. Supp. 2d 17, 26 (D. Mass. 1998).

---

[1] Earlier this year, the Federal Circuit granted *en banc* review to consider overruling its decisions including and following *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) because its precedent on this point is in conflict with the Supreme Court. *Lighting Ballast Control LLC v. Philips Elec. N. Am. Corp.*, 500 Fed.Appx. 951 (Fed Cir. Mar. 15, 2013) (granting en banc review). Both parties and numerous *amici* agree that *Cybor* should be overruled. Oral argument is scheduled for September 13, 2013. *Id.,* No. 2012-1014 (Fed. Cir. May 10, 2013) (Slip Opinion).

## II. Claims Are Construed From the Viewpoint of a Person Having Ordinary Skill in the Art

"The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). Thus,

> [b]efore turning to the task of claim construction, the court must first determine the relevant prism through which the patent in suit should be viewed. The court's assigned task when addressing claim construction is to ascertain how a person of ordinary skill in the art would have understood the disputed claim terms at the time of the invention.

*PRT, LLC v. B2 Networks, Inc.*, 2011 WL 7640123 (N.D.N.Y Sept. 1, 2011), *report and recommendation adopted,* 5:10-CV-809 FJS/DEP, 2012 WL 1097319 (N.D.N.Y. Mar. 30, 2012). Courts consider various factors when assessing its viewing prism:

> The person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art. The actual inventor's skill is not determinative. Factors that may be considered in determining level of skill include: type of problems encountered in art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field. Not all such factors may be present in every case, and one or more of them may predominate.

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962-63 (Fed. Cir. 1986).

From that viewpoint, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. The Federal Circuit set forth this framework as follows:

> It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person

is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention—the inventor's lexicography—must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decisionmaking process by reviewing the same resources as would that person, *viz.,* the patent specification and the prosecution history.

*Id*. (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). Thus, "[b]ecause the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d 1314. "Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention." *Id.* at 1318.

### III.    Limitations Must Not Be Imported Into the Claims

While the patent specification, prosecution history, and external sources inform a person of ordinary skill in the art on the meaning of claim terms, a court is prohibited from reading limitations into the claims. *Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010) ("When consulting the specification to clarify the meaning of claim terms, courts must not import limitations into the claims from the specification.")

**IV.    35 U.S.C. § 112(f) Only Governs a Term When
the Claim Lacks Structure, Material, or Acts**

In some cases the construction of a claim term may be governed by 35 U.S.C.

§ 112(f) (formerly subparagraph 6). Absent the word "means" in the claim language, a

"strong" presumption exists that 35 U.S.C. § 112(f) does not govern construction of the

term. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir.

2004). That presumption cannot be overcome when the claim recites some structure,

material, or acts to perform the function, even if the claim language "covers a broad class

of structures and even if the term identifies the structures by their function" – it does "not

require[] the claim term to denote a specific structure." *Id*. at 1359-60.

Even use of the word "means" only creates a presumption that 35 U.S.C. § 112(f)

applies: "where a claim recites a function, but then goes on to elaborate sufficient

structure, material, or acts within the claim itself to perform entirely the recited function,

the claim is not in means-plus-function format." *Sage Products, Inc. v. Devon Indus.,

Inc.*, 126 F.3d 1420, 1427-28 (Fed. Cir. 1997); *TI Grp. Auto. Sys. (N. Am.), Inc. v. NDO

N. Am. L.L.C.*, 375 F.3d 1126, 1135 (Fed. Cir. 2004) (holding that "pumping means" was

not governed by 112(f) because the claim language overcame the presumption); *LSI

Indus., Inc. v. ImagePoint, Inc.*, 279 F. App'x 964, 971 (Fed. Cir. 2008) (holding that

"channel" provided sufficient structure for "channel means"); *Robinson v. Cannondale

Corp.*, 81 F. App'x 725, 728 (Fed. Cir. 2003) (holding that "rotational indexing means" is

not a means-plus-function limitation because the claim recited structure that

accomplished the function of "having the bicycles head tube suspension …

synchronously rotate…"). In *MediaCom Corp. v. Rates Tech., Inc.*, 4 F. Supp. 2d 17, 26

(D. Mass. 1998) the court explained:

> The Federal Circuit has made it clear that the use of the
> words "means for ___ing" in a claim element does not
> blindly trigger application of 35 U.S.C. § 112, ¶ 6. *Cole v.
> Kimberly–Clark Corp.*, 102 F.3d 524, 531 (Fed.Cir.1996).
> The means-plus-function analysis applies only where the
> claim merely recites a function without a definite structure,
> material, or act. If a claim uses the word "means for
> ___ing", but also recites a structure, material, or act, with
> sufficient clarity that it satisfies the particularity and
> distinctness requirements of 35 U.S.C. § 112, ¶ 2,10 the
> means-plus-function analysis is unnecessary.

"In considering whether a claim term recites sufficient structure to avoid

application of section 112 ¶ 6, we have not required the claim term to denote a specific

structure. Instead, we have held that it is sufficient if the claim term is used in common

parlance or by persons of skill in the pertinent art to designate structure, even if the term

covers a broad class of structures and even if the term identifies the structures by their

function." *Lighting World*, 382 F.3d at 1359-60. Whether the term reasonably describes

some class of structure is, again, determined through the eyes of a person having ordinary

skill in the art. *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir.

1996) ("What is important is not simply that a "detent" or "detent mechanism" is defined

in terms of what it does, but that the term, as the name for structure, has a reasonably well

understood meaning in the art.")

Just as a claim may describe "structure" for a term, it may describe an "act" that

removes it from the auspice of section 112(f). *Masco Corp. v. United States*, 303 F.3d

1316, 1328 (Fed. Cir. 2002) (holding that "transmitting a force" was an act, not a

function governed by section 112). In *Masco*, the Court, quoting Chief Judge Rader,

explained the difference between acts and functions:

> the "underlying function" of a method claim element
> corresponds to what that element ultimately accomplishes
> in relationship to what the other elements of the claim and

> the claim as a whole accomplish. "Acts," on the other hand,
> correspond to how the function is accomplished.

*Id.*

### V.  35 U.S.C. § 112(f) Only Requires Structure, Material, or Acts From the Specification Sufficient to Perform the Function

The prohibition of importing limitations into the claims applies with equal force even where 35 U.S.C. § 112(f) governs the claim language. Thus, courts only require the specification to have "some structure corresponding to the means in the specification, as the statute states, so that one can readily ascertain what the claim means and comply with the particularity requirement of ¶ 2." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999). The operative word is *some:* no more than necessary. "Under § 112, ¶ 6 [now subsection f], a court may not import functional limitations that are not recited in the claim, or structural limitations from the written description that are unnecessary to perform the claimed function." *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001). "The requirement of specific structure in § 112, ¶ 6 thus does not raise the specter of an unending disclosure of what everyone in the field knows that such a requirement in § 112, ¶ 1 would entail." *Id.*; *see St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 691 F. Supp. 2d 538, 561 (D. Del. 2010) ("I am not persuaded that the additional hardware structures identified by Defendants are necessary to perform the described function."). Thus, "knowledge of one skilled in the art can be called upon to flesh out a particular structural reference in the specification for the purpose of satisfying the statutory requirement of definiteness." *Creo Products, Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1347 (Fed. Cir. 2002).

**RTI'S CONSTRUCTIONS**

VI.     **Claims of the Patents-In-Suit Are Construed As A**
        **Degreed Electrical Engineer Having Industry**
        **Experience in Telephony Interprets Them**

The patents-in-suit relate to innovations that improve the routing of calls

according to cost. (Walton 6)[2]. To understand the patented technology at the time of the

invention, a person would have bachelor of science in electrical engineering or computer

science (or the equivalent), and had at least two years of specific, hands-on experience

designing, building, and solving problems within the numerous aspects of call routing, as

explained in Mr. Bradley Walton's declaration. (Walton 6)

This person, before construing the claims, would have reviewed the specifications

supporting the claims, and would have knowledge of the relevant art. *Phillips*, 415 F.3d

at 1313. This court must construe the claims as the above person interprets them. *Id*;

*Custom Accessories,* 807 F.2d at 962-63.

VII.    **Construction of Disputed Terms**
        **in Claim 1 of the '085 Patent**

A.      **comprising**

A claim has three parts: its preamble, transition, and body. *Roll-Rite, LLC v. Shur-*

*Co, LLC*, 2013 WL 3798101, *3 (E.D. Mich. July 22, 2013). Transition phrases connect

the preamble to the body. *Id*. "Comprising" is such a transition phrase, and is open-ended.

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348

(Fed. Cir. 2001) ("When a patent claim uses the word "comprising" as its transitional

_____

[2] "Walton __" refers to numbered paragraphs in Mr. Bradley Walton's expert declaration,
filed concurrently herewith. Mr. Walton earned a degree in electrical engineering and
commands over nineteen years of experience related to the field of the patents-in-suit.

phrase, the use of "comprising" creates a presumption that the body of the claim is open. In the parlance of patent law, the transition "comprising" creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements.")

### B.  device

A person having ordinary skill in the art understands that the term is used only as an introduction in the preamble (not in the body of the claim), and is superfluous to the language in the body of the claim, which describes a complete invention. (Walton 8) Terms in the preamble are not limiting unless they "breathe life and meaning into the body of the claim." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012) (holding that "[a]n eyeglass device…" was not a limitation — as a "general rule preamble language is not treated as limiting."). When the body of the claim sets out the complete invention, as here, the preamble is "superfluous" and not limiting. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002) (holding that the preamble was superfluous and not limiting.) Thus, device is not a limitation of the claim.

If the Court construes device as a limitation, the ordinary meaning of the term is understood variously as something designed for a particular purpose (Walton 8) and courts have recognized the term may merely indicate that the claimed invention consists of elements rather than method steps. *See Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368. 1376 n. 8 (Fed.Cir.2011) ("Claims which recite a 'system,' 'apparatus,' 'combination' or the like are all analytically similar in the sense that their claim limitations include elements rather than method steps."); *NTP, Inc.*

*v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) (similarly categorizing "system or device" for infringement analysis) (citing *In re Kollar*, 286 F.3d 1326, 1332 (Fed.Cir.2002) (recognizing "the distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process, which consists of a series of acts or steps....)). Further, "a device" should be construed as one or more devices because there is no clear intent to so limit "a" to only one. *See Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. Feb. 4, 2013) ("an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase comprising" unless a patentee has "'evidence[d] a clear intent' to limit 'a' or 'an' to 'one'").

## C.    a housing forming an enclosure and comprising

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean one or more housings forming one or more enclosures. (Walton 9-11) The term "a," as above, is an open-ended term here and means one or more. *Accent Packaging*, 707 F.3d at 1326. Nothing in the claims, specification, or prosecution history demonstrates to the artisan that the inventor clearly intended to limit "a" or "an" as used here to only one. (Walton 9-11) Just as the claims do not limit "a" to only one, neither does the specification. In fact, the specification explained that the invention "may be a number of different configurations," in fact "any configuration can be used depending on the designer's choice and purchaser's desire." (Walton 9-11; '085 Patent, 3:27-30; 2:29-30)

Further, the claim language and prosecution history support that not all the components of the invention need be in a single housing forming a single enclosure. The

claim includes eight subparagraphs, and the housing forming an enclosure is drafted as its own paragraph, thus separating the housing forming an enclosure from elements described in other paragraphs. This interpretation is also supported by the prosecution history. During prosecution, the inventors specifically removed language that would have described a housing forming an enclosure as including the remaining elements. Specifically, the inventors, in a response to an indefiniteness rejection, deleted from the original claim the following italicized language:

> …
>
> a housing forming an enclosure and having means mounted on the housing for interconnection within the phone line, said phone line interconnection means including first jack means for connection to the phone side of the line, and second jack means for connection to the network side of the phone line, *said enclosure including therein*,
>
> switch means operatively connected to said first jack means for disconnecting said first phone from the network, means operatively connected to said switch means for generating a current through said switch means…

(Walton 10-11)

Thus, this Court should, as does the artisan, construe the disputed phrase as one or more housings forming one or more enclosures.

### D.    first jack means for connection to said first telephone

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean a jack used to connect a telephone. (Walton 12-13) To the artisan, a "jack" is a class of structures that provides such a connection. (Walton 12-13) Thus, this phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt v. AOL*, 641 F.3d 1331, 1340-41 (Fed. Cir. 2011).

—10—

Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that a "jack" as used in the claims and specification provides sufficient structure to provide a connection to the first telephone. (Walton 12-13) The specification links a "jack" for connection to a telephone. (Walton 13; *E.g.*, '085 Patent, Abs: 4-7, 1:60-66) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention." (Walton 13); *Creo Products,* 305 F.3d at 1347. It is improper, then, to import into the claim term any additional structure from the specification. Thus, whether or not this Court applies 35 U.S.C. § 112(f), this Court should, as does the artisan, construe the phrase as a jack for connection to a telephone.

### E.  second jack means for connection to said network

A person having ordinary skill in the art understands the phrase, as used in the claim and specification, to mean a jack used to connect a network. (Walton 14-15) To the artisan, a "jack" is a class of structures that provide such a connection. (Walton 14-15) Thus, this phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt*, 641 F.3d at 1340-41.

Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that a "jack," as used in the claims and specification, provides sufficient structure to provide a "connection" to the network. (Walton 14-15) The specification links a "jack" for connection to a network. (Walton 15; e.*g.*, '085 Patent, Abs: 4-7, 1:60-66) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention. (Walton 15); *Creo Products,* 305 F.3d at 1347. It is improper, then, to import into the claim term any additional

structure from the specification. Thus, whether or not this Court applies 35 U.S.C. § 112(f), this Court should, as does the artisan, construe the phrase as a jack for connection to a network.

F. **switch means operatively connected to said first jack means for disconnecting said first telephone from said network during routing of a telephone call from said first telephone**

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean a switch operatively connected to a jack for disconnecting a telephone from a network during routing of a telephone call from the telephone. (Walton 17) The artisan understands the term "switch" as a class of structures that connect and disconnect communications between a telephone and a network. (Walton 16-17) Thus, the phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt*, 641 F.3d at 1340-41; *accord, MediaCom v. Rates Technology Inc.*, 34 F.Supp.2d 76, 79 (D. Mass. 1998) (denying summary judgment as "[t]he Court has further ruled that the 'switch means' element is not a means-plus-function claim element governed by the sixth paragraph of 35 U.S.C. § 112").

Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that a "switch" provides sufficient structure to disconnect communications between a telephone and a network. (Walton 16-17) The specification links a "switch" to the function of disconnecting communications between a telephone and a network. (Walton 17; *e.g.*, '085 Patent, Abs: 7-9, 1:63-66, 2:18-19, 3:61-65, 4:61-66, 5:16-25) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention. (Walton 17); *Creo Products*, 305 F.3d at 1347. It is improper, then, to import into the claim term any additional

structure from the specification. Thus, whether or not this Court applies 35 U.S.C. § 112(f), this Court should, as does the artisan, construe the phrase as a switch operatively connected to a jack for disconnecting a telephone from a network during routing of a telephone call from the telephone.

### G.    disconnecting

A person having ordinary skill in the art understands the term as used in the claim and specification to mean the interruption of a connection. (Walton 18-19) As explained by Mr. Walton, a connection in the context of claim here is generally understood by a person having ordinary skill in the art as a path that carries signaling and other information such as transmission of the voice. (Walton 18-19) Thus, this Court should, as does the artisan, construe the term as the interruption of a connection.

### H.    means operatively connected to said switch means for generating a current through said switch means to the first telephone corresponding to a current provided by said network, when the first telephone is disconnected from said network by said switch means

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean a current source operatively connected to a switch for generating a current through the switch to the telephone corresponding to a current provided by the network, when the first telephone is disconnected from the network by the switch. (Walton 20-22) The artisan understands the language "generating a current" as describing or defining a class of structures known as a current source. (Walton 20) A current source functions to generate a current. (Walton 20) Thus, the phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt*, 641 F.3d at 1340-41.

—13—

Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that a "current source" provides sufficient structure to generate a current. (Walton 21-22) The specification links a "current source" to the function of generating a current. (Walton 21; *e.g.*, '085 Patent, Abs:9-12, 1:66-2:1, 2:19-20, 3:54-61, 4:22-27, 5:21-25) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention. (Walton 21); *Creo Products,* 305 F.3d at 1347. It is improper, then, to import into the claim term any additional structure from the specification. Thus, whether or not this Court applies 35 U.S.C. § 112(f), this Court should, as does the artisan, construe the phrase as a current source operatively connected to a switch for generating a current through the switch to the telephone corresponding to a current provided by the network, when the first telephone is disconnected from the network by the switch.

## I.      means for generating a current

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean a current source. See above.

## J.      means operatively connected to said switch
##         means for detecting and storing said telephone
##         number originating from the first telephone

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean logic operatively connected to a switch for detecting and storing a telephone number originating from the telephone. (Walton 23-26) The artisan understands the terms "detecting" and "storing" as describing or defining a class of logic operations (*i.e.*, structures) that detect and store. (Walton 23-24) Thus, the phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt*, 641 F.3d at 1340-41.

—14—

Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that detection logic and storage logic provide sufficient structure to detect and store a telephone number. (Walton 23-26) The specification links detecting and storing logic to the functions detecting and storing a telephone number. (Walton 25; *e.g.*, '085 Patent, Figure 4; Figure 4a; Figure 5; 4:40-44; 4:45-6:30) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention. (Walton 25-26); *Creo Products,* 305 F.3d at 1347. It is improper, then, to import into the claim term any additional structure from the specification. Thus, whether or not this Court applies 35 U.S.C. § 112(f), this Court should, as does the artisan, construe the phrase as logic operatively connected to a switch for detecting and storing a telephone number originating from the telephone.

### K. means for addressing said database means for identifying a plurality of communication switch paths to said second telephone and the cost rate of each path

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean database addressing logic for addressing said database means for identifying a plurality of communication switch paths to said second telephone and the cost rate of each path. (Walton 27-30) The artisan understands the term "database" as describing or defining a class of structures that address the data stored therein to identify something, in this case a plurality of communication switch paths to the called telephone and the cost rate of each path. (Walton 28) Thus, the phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt*, 641 F.3d at 1340-41.

Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that a database provides sufficient structure to

address the data therein to identify something. (Walton 29) The specification links a database to the function of identifying a plurality of communication switch paths to the called telephone and the cost rate of each path. (Walton 29) (*E.g.*, '085 Patent, Figure 4; Figure 4a; Figure 5; 4:45-6:30) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention. (Walton 29-30); *Creo Products,* 305 F.3d at 1347. It is improper, then, to import into the claim term any additional structure from the specification. Thus, whether or not this Court applies 35 U.S.C. § 112(f), this Court should, as does the artisan, construe the phrase as database addressing logic for addressing said database means for identifying a plurality of communication switch paths to said second telephone and the cost rate of each path.

>           **L.      means actuated subsequent to the detection
>                     of said telephone number originating from said
>                     first telephone for comparing the cost rate of each
>                     path so as to determine a least cost route**

    A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean comparing logic actuated subsequent to the detection of said telephone number originating from a first telephone for comparing the cost rate of each path so as to determine a least cost route. (Walton 31-34) The artisan understands the term "comparing" as used in the claim is describing or defining a class of logic operations (*i.e.*, structure) that compare multiple inputs. (Walton 32) Thus, the phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt*, 641 F.3d at 1340-41.

    Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that comparing logic provides sufficient structure for comparing the cost rate of each path. (Walton 33) The specification links comparing logic to the function of comparing the cost rate of each path so as to determine a least cost

route. (Walton 33; *e.g.*, '085 Patent, Abs: 19-20, 2:10-11, 3:3-4, 6:20-30, Figure 4, Figure 5) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention. (Walton 33); *Creo Products,* 305 F.3d at 1347. It is improper, then, to import into the claim term any additional structure from the specification. Thus, whether or not this Court applies 35 U.S.C. § 112(f), this Court should, as does the artisan, construe the phrase as comparing logic actuated subsequent to the detection of said telephone number originating from a first telephone for comparing the cost rate of each path so as to determine a least cost route.

> **M.    means operatively connected to said switch means and said second jack means for generating a number sequence corresponding to a desired carrier so that said call is routed through said second jack means to the selected communication path and carrier to establish a switched connection between said first telephone and said second telephone phone**

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean logic operatively connected to said switch and said second jack for generating a number sequence corresponding to a desired carrier so that said call is routed through said second jack to the selected communication path and carrier to establish a switched connection between said first telephone and said second telephone phone. (Walton 39) The claim language describes to a person having ordinary skill in the art logic (i.e., structure) for generating a number sequence as claimed. (Walton 36-37) Thus, the phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt*, 641 F.3d at 1340-41.

Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that logic such as a routine or subroutine provides

sufficient structure to generate a number sequence that corresponds to a desired carrier. (Walton 38) The specification links such logic to the function of generating a number sequence corresponding to a desired carrier. (Walton 38; *e.g.*, '085 Patent, Figure 4; Figure 4a; Figure 5; 4:45-6:30, *see also* Abs:20-25, 2:11-17, 2:20-24, 4:34-38) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention. (Walton 38-39); *Creo Products,* 305 F.3d at 1347. It is improper, then, to import into the claim term any additional structure from the specification. Thus, this Court should, as does the artisan, construe the phrase as logic operatively connected to said switch and said second jack for generating a number sequence corresponding to a desired carrier so that said call is routed through said second jack to the selected communication path and carrier to establish a switched connection between said first telephone and said second telephone phone.

## VIII.   Construction of Disputed Terms in Claim 1 of the '769 Patent

### A.      at a predetermined time and date

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean at a predetermined time and date. (Walton 41) When the ordinary meaning of the claim language is clear, as here, it is unnecessary to rephrase the language for the sake of doing so, and doing so risks complicating the language and even improperly changing its scope. *See generally, O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (explaining that "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (explaining that claim construction "is not an obligatory exercise in redundancy.")

Thus, this Court should, as does the artisan, construe the phrase as a predetermined time and date.

**B.       a data transfer line**

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean a data transfer line (a communication line or path to transfer data). (Walton 42) When the ordinary meaning of the claim language is clear, as here, it is unnecessary to rephrase the language for the sake of doing so, and doing so risks complicating the language and even improperly changing its scope. *See generally, O2 Micro*, 521 F.3d at 1362; *U.S. Surgical*, 103 F.3d at 1568.

Thus, this Court should, as does the artisan, construe the phrase as a data transfer line (a communication line or path to transfer data).

**C.       call rating device**

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean a call rating device. (Walton 43) The artisan understands the phrase "call rating device," as used in the specification, describes a device that rates calls. (Walton 43)

The term does not include the word means, creating a strong presumption that 35 U.S.C. § 112(f) does not apply. That presumption is not overcome when, as here, a person having ordinary skill in the art understands a "call rating device" has a class of structures that rate calls. (Walton 43) Moreover, "[w]ithout an identified function," as here, the term "cannot invoke 35 U.S.C. § 112." *York Products, Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1574 (Fed. Cir. 1996); *Sage Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427 (Fed. Cir. 1997)(when the term "specifies no

corresponding function for the 'means,' it does not implicate section 112."). Thus, the phrase is not governed by 35 U.S.C. § 112(f). *See Rembrandt*, 641 F.3d at 1340-41.

Even if this Court applies 35 U.S.C. § 112(f) to this phrase, a person having ordinary skill in the art understands that call rating device provide sufficient structure to rate calls. (Walton 43) With knowledge of the above structure, the artisan could "flesh out" the particulars in order to make the claimed invention. (Walton 43); *Creo Products,* 305 F.3d at 1347. It is improper, then, to import into the claim term any additional structure from the specification. Thus, whether or not this Court applies 35 U.S.C. § 112(f), this Court should, as does the artisan, construe the phrase as a call rating device.

### D.    transmitting over the data transfer line

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean transmitting over the data transfer line. (Walton 44) When the ordinary meaning of the claim language is clear, as here, it is unnecessary to rephrase the language for the sake of doing so, and doing so risks complicating the language and even improperly changing its scope. *See generally, O2 Micro*, 521 F.3d at 1362; *U.S. Surgical*, 103 F.3d at 1568.

Thus, this Court should, as does the artisan, construe the phrase as transmitting over the data transfer line.

### E.    indicia identifying the call rating device and
###        the date and time of the last update of the billing
###        rate parameters

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean indicia identifying the call rating device and the date and time of the last update of the billing rate parameters. (Walton 45) When the ordinary

—20—

meaning of the claim language is clear, as here, it is unnecessary to rephrase the language for the sake of doing so, and doing so risks complicating the language and even improperly changing its scope. *See generally, O2 Micro*, 521 F.3d at 1362; *U.S. Surgical*, 103 F.3d at 1568.

Thus, this Court should, as does the artisan, construe the phrase as indicia identifying the call rating device and the date and time of the last update of the billing rate parameters.

### F.     verifying if billing rate parameters should be updated

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean verifying if billing rate parameters should be updated. (Walton 46) When the ordinary meaning of the claim language is clear, as here, it is unnecessary to rephrase the language for the sake of doing so, and doing so risks complicating the language and even improperly changing its scope. *See generally, O2 Micro*, 521 F.3d at 1362; *U.S. Surgical*, 103 F.3d at 1568.

Thus, this Court should, as does the artisan, construe the phrase as verifying if billing rate parameters should be updated.

### G.     transmitting from the rate provider to the call rating device

A person having ordinary skill in the art understands the phrase as used in the claim and specification to mean transmitting from the rate provider to the call rating device. (Walton 47) When the ordinary meaning of the claim language is clear, as here, it is unnecessary to rephrase the language for the sake of doing so, and doing so risks

complicating the language and even improperly changing its scope. *See generally, O2 Micro*, 521 F.3d at 1362; *U.S. Surgical*, 103 F.3d at 1568.

Thus, this Court should, as does the artisan, construe the phrase as transmitting from the rate provider to the call rating device.

## CONCLUSION

For the foregoing reasons, RTI requests that this Court construe the above disputed claim language as proposed by RTI.

Respectfully Submitted,

Dated: September 11, 2013                    SPRINGUT LAW PC
New York, New York


By:  /s/  Milton Springut
            Milton Springut
            Tal S. Benschar
            Scott Spencer
            75 Rockefeller Plaza, 19th Floor
            New York, New York 10019
            (212) 813-1600

            *Counsel for Plaintiff*
            Rates Technology Inc.