# O'KELLY ERNST & BIELLI, LLC

George Pazuniak
GP@Del-IPLaw.com
Direct: (302) 478-4230

901 N. Market Street
Suite 1000
Wilmington, DE 19801
Phone: (302) 778-4000
Fax: (302) 295-2873

December 19, 2013

Honorable Shira A. Scheindlin
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

RE:   *Rates Technology Inc. v. Broadvox Holding Company LLC*
<u>Civil Action No. 13 Civ. 0152 (SAS) (SN)</u>

Dear Judge Scheindlin:

      This letter is being submitted by the Defendant entities in accordance with the discussions with the Court at the hearing on December 2, 2013, and replies to certain allegations in Plaintiff RTI's Reply Claim Construction Brief (Dkt. 101).

      Essentially every legal argument by RTI misstates the law, including basic legal points that are contradicted by established governing authority cited in Defendants' answering brief – and which RTI simply ignores. The cases cited by RTI often say the opposite from what RTI argues. The need to address RTI's repeated legal errors in a longer letter should not mask the salient legal truism and fact here – that patentees cannot make one argument on a public record in the PTO to obtain the patents, and then repudiate those arguments and argue the opposite when they sue on those patents. And patentees cannot rewrite claims based on the artifice of an alleged expert who contributes nothing except his conclusory opinions formed without considering all the evidence, including the prior *Mediacom* cases and the reexamination records.

      Defendants cannot address each error in RTI's Reply Brief without unduly lengthening this letter. However, Defendants submit the following points which go to basic law governing the hearing scheduled for December 27, 2013.

### Walton's Failure to Consider Re-Examinations Disqualifies His Declaration

Defendants challenged RTI's "expert" Walton on the grounds that his statements and omissions manifest that he had never considered the prosecution histories of the two RTI patents-in-suit. RTI's only response is footnote 10 (Dkt. 101 at p. 15) where RTI asserts that the alleged "expert" Walton said he reviewed the prosecution histories. However, Walton cites only one excerpt from the <u>original prosecution</u> of the '085 patent, and then repeats the two mantras for every one of his purported constructions:

> I have reviewed the language "----" in the context of the remainder of claim 1, the specification, the prosecution history, and my knowledge of a person of ordinary skill in the art. ***
>
> Nothing in the specification or prosecution provides a more restrictive meaning to the term.

These mantras do not actually say that he considered any prosecution records, and there is no record to demonstrate that Walton's references to a "prosecution history" are to the re-examination records, as opposed to the original prosecutions. The term "re-examination" does not appear anywhere in Walton's declaration or RTI's opening brief. The failure to recognize or acknowledge the fact of the re-examination by counsel or expert suggests neither one cared to review the record.

After Defendants directly challenged Walton never considering the relevant evidence, the subsequent silence in the record from Walton's failure to respond is deafening. Equally telling is that RTI, rather than submitting evidence of what Walton actually considered, can only make one of its legal misstatements: "The "prosecution history" which Mr. Walton reviewed, includes all "reexamination." See *Y2 Associates v. Phone-Mate, Inc.*, 837 F.2d 1097 (Fed. Cir. 1987). Defendants agree that an expert must consider the re-examination prosecutions, but the cited case certainly does not obligate the Court to assume that Walton had considered the reexaminations in the face of the contrary evidence and omissions in the record.

### Walton's Declaration Is Irrelevant

Defendants stated in their brief that claims are construed as would a person skilled in the art (Dkt. 93 at 3), and RTI is wrong in arguing that Defendants had denied that point. (Dkt. 101 at 5). The rule is based on the fact that different scientific disciplines have their own language, and an understanding of the patented technology is necessary to understand the patent claims. The rule does not authorize patentees to submit purported "expert" opinions about what a skilled artisan would understand to avoid the governing law of claim constructions, any more than an expert can attempt to rewrite the rules of contract interpretation. The governing law is:

> When construing a claim, a court should look first to the intrinsic evidence, i.e., the claims themselves, the written description portion of the specification, and the prosecution history. The intrinsic evidence should usually be sufficient to enable

one to determine the meaning of a claim term. ... **When the intrinsic evidence is unambiguous, it is improper for the court to rely on extrinsic evidence such as expert testimony for purposes of claim construction.** The rationale for this rule is that:

> [t]he claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely. In other words, competitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention. Allowing the public record to be altered or changed by extrinsic evidence ..., such as expert testimony, would make this right meaningless. The same holds true whether it is the patentee or the alleged infringer who seeks to alter the scope of the claims.
>
> ... Once a dispute over claim construction arises, "experts" should also not be heard to inject a new meaning into terms that is inconsistent with what the inventor set forth in his or her patent and communicated, first to the patent examiner and ultimately to the public. Patents should be interpreted on the basis of their intrinsic record, not on the testimony of such after-the-fact "experts" that played no part in the creation and prosecution of the patent.

*Bell & Howell Document Mgmt. Products Co. v. Altek Sys.*, 132 F.3d 701, 705-06 (Fed. Cir. 1997). This is established governing law that is the foundation of the patent system. See also the cases cited in Defendants' brief. (Dkt. 93 at 6-7).

Unable to find any authority to refute this basic legal principle, RTI attacks Defendants for quoting from a dissenting opinion. Defendants inadvertently failed to note that one of its quotations was from a dissent, but the quotation still reflected the same principle that was cited in the case quoted above and in the many other cases cited in Defendants' brief. A basic rule of claim construction is not erroneous simply because it is cited in a dissenting opinion.

RTI's further discussion of *Aventis Pharm. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363 (Fed. Cir. 2013), is inapposite. The issue in *Aventis* was the meaning of "substantially pure" where neither the specification nor prosecution history determined the parameters of either "substantially" or "pure." Thus, the Court said that – in the absence of such intrinsic guidance – it was necessary to understand how a person skilled in the relevant art would define "substantially pure" based on the disclosures in the specification, and "in view of the claimed improvements over the prior art." Nothing in the *Aventis* opinion authorizes a party or its expert to provide legal constructions not based on scientific discipline and without regard to the specifications and the prosecution history. That sort of expert opinion does not merit the Court's consideration.

RTI's citation to *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1248-49 (Fed. Cir. 2001) (Dkt. 101 at 8), is equally inaccurate. In *AFG*, the Court confirmed that expert

testimony could not be used to vary what is shown in the intrinsic record, but reversed, because the lower court had refused to consider expert testimony that explained the scientific art-based distinction between the terms "layers and interlayers," which was the "distinction drawn in the written description of the '532 patent between these two terms." Here, Walton provides no science, but only unsupported and unfounded opinions, and without considering the relevant record.

### RTI Should Not Ignore Prior Judicial Constructions of the Claim Terms

RTI concedes that its proposed constructions contradict the decision of the Court in *Mediacom Corp. v. Rates Tech., Inc.*, 4 F.Supp.2d 17 (D. Mass. 1998), and *Mediacom Corp. v. Rates Tech., Inc.*, 34 F.Supp.2d 76, 79 (D. Mass. 1998). RTI dismisses the decisions as "interlocutory." That, however, does not excuse RTI's failure to disclose and address such material information in its opening brief. Even if "interlocutory," the earlier Court's decisions exhaustively analyzed the then-existing record of the RTI patents, and *stare decisis* requires RTI to explain why the well-considered prior precedent should not be followed. See *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996):

> But whereas issue preclusion could not be asserted against new and independent infringement defendants even within a given jurisdiction, treating interpretive issues as purely legal will promote (though it will not guarantee) intrajurisdictional certainty through the application of *stare decisis* on those questions not yet subject to interjurisdictional uniformity under the authority of the single appeals court.

RTI should have honestly disclosed to the Court that its constructions contradicted those of a prior judicial decision, and explained why RTI is correct and the Court was wrong.

In fact, because the *Mediacom* cases were decided before the subsequent reexaminations, where RTI was forced to overcome new prior art, the prior judicial constructions were, if anything, more favorable to RTI than they would be today. RTI fails to present any supportable challenge to this Court following the *stare decisis* of the prior judicial claim constructions.

### RTI's Continuing Errors Arguing 35 U.S.C. §112(f)

RTI errs in asking the Court to ignore the "means" limitations of claim 1 of the '085 patent. (Dkt. 101 at 10-12). RTI's argument heading that "'Means,' Merely a Starting Point, Does Not Replace the Artisan's Viewpoint" is unsupported and diametrically opposite well-established law. RTI cites *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1364 (Fed. Cir. 2013) (Dkt. 101 at 10), but that case did not involve a means-plus-function element. The issue in *Power Integrations* was whether a non-means-plus-function element should nevertheless be converted to a means-plus-function element – a direct opposite of the issue here. The statement quoted by RTI makes sense in determining whether a non-means limitation should be converted to a "means" limitation, but that principle has never been applied

7333431.2

by any court in determining whether the strong presumption arising from the use of the term "means" has been overcome.

RTI errs in its citation to other cases cited at Dkt. 101 p. 10. The issue in *Creo Products, Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1347 (Fed. Cir. 2002), was whether the structure identified in the specification as corresponding to the "means" limitation was sufficiently definite. The Court stated that the sufficiency of the structure disclosed in the specification to perform the function of the "means" claim is determined by one skilled in the art:

> "To the extent that Creo contends that additional structure is required for completely performing the function of "rotating each cylinder," we consider such structure to be implicit in the disclosure of the '368 patent. Under our case law interpreting § 112[f], knowledge of one skilled in the art can be called upon to flesh out a particular structural reference in the specification for the purpose of satisfying the statutory requirement of definiteness. ... Thus, in addressing the question whether a means-plus-function limitation satisfies the definiteness requirement, we focus our inquiry on whether one skilled in the art would have understood that the specification of each patent disclosed structure capable of performing the function recited in the claim limitation."

Contrary to RTI's argument, the Court never suggested that "skill in the art" determines whether to apply §112(f).

Similarly, *Typhoon Touch Technologies, Inc. v. Dell, Inc.*, 659 F. 3d 1376, 1384 (Fed. Cir. 2011) (citing *Atmel Corp. v. Info. Storage Devices*, 198 F.3d 1374, 1382 (Fed. Cir. 1999)), contradicts RTI's argument, and required that a structure in the specification be identified for every "means" limitation:

> Applying these principles, in *Atmel* ...., the court explained the <u>role of the specification in functional claiming</u> under § 112[f]:
>
> All one needs to do in order to obtain the benefit of that claiming device is to recite some structure corresponding to the means <u>in the specification, as the statute states</u>, so that one can readily ascertain what the claim means and comply with the particularity requirement of ¶ 2. The requirement of specific structure in § 112, ¶ 6 thus does not raise the specter of an unending disclosure of what everyone in the field knows that such a requirement in § 112, ¶ 1 would entail.

Thus, the Court contradicted RTI's statement that skill in the art determines whether to apply §112(f). The Court specifically required that every "means" claim limitation be corresponded to a structure in the specification that performed the claimed function. Skill in the art determines only whether a structure disclosed in the specification is sufficient to perform the claimed function. RTI has simply distorted the law to say the opposite of what the cases actually held.

O'KELLY ERNST & BIELLIEN, LLC

December 19, 2013
Page 6 of 6

    Contrary to RTI's arguments at pp. 11 and 16, the word "means" in a claim is a *per se* trigger for Section 112(f). This is stated in the case cited by RTI. *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) ("It is well settled that '[a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112[f] applies.'"). See also *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011):

> The framework under which we determine if a claim limitation invokes § 112[f] is straightforward. The use of the term 'means' <u>triggers</u> a rebuttable presumption that § 112[f] governs the construction of the claim term. Conversely, where, as here, the claim language does not recite the term 'means,' we presume that the limitation does not invoke § 112[f].

To overcome the "*per se* trigger," RTI must demonstrate that the "means" limitation includes both a function and a clearly-defined structure. *Id.*; see also *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259-60 (Fed. Cir. 2008) ("If … the [means] claim recites sufficient structure for performing the described functions in their entirety, the presumption of § 112[f] is overcome.… Sufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure.").

    The conclusory unsupported allegations by Walton, who had not even reviewed the record of the reexaminations, is not sufficient for any purpose. And, even if considered, Walton's conclusory allegations fail to demonstrate that each of the "means" claim limitations recites "sufficient structure for performing the described functions in their entirety."

    RTI then misstates *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1304 (Fed. Cir. 1999), by cropping the relevant parts from the Court's decision. The Court actually said:

> In reaching the opposite conclusion, the special master seemed concerned that the claim did not recite every last detail of structure disclosed in the specification for performing the claimed moving function. This court's case law, however, does not require such an exhaustive recitation to avoid § 112[f]. Instead, the claim need only recite "sufficient" structure to perform entirely the claimed function. Based on the structure disclosed in the specification for performing the moving function, <u>these claims recite nearly all (if not all) of the structural components of the positioning mechanism. In any case, they clearly recite more than sufficient structure for moving the transducer from track to track</u>. Moreover, this case is different from *Laitram*—relied on by the district court—where the claim element merely recited "some" structure that only "serve[d] to further specify the function of [the] means."

Thus, the Court carefully underscored that the entire structure was set forth in the claims. RTI's claim limitations contain no structure at all, or, at best, only "some structure."

7333431.2

O'KELLY ERNST & BIELLIEN, LLC

December 19, 2013
Page 7 of 7

RTI next misstates *Robinson v. Cannondale Corp.*, 81 Fed. App'x 725, 728, 2003 WL 22839336 (Fed. Cir. 2003) (Dkt. 101 at 12). The case did not involve the issue here – patentee RTI distinguishing the prior art, and the PTO allowing the claims, on the basis that the "means" terms were governed by §112(f). *Robinson* merely addressed a very specific and limited fact issue that bears no relationship here. The court's complete statement was:

> In this case, the "rotational indexing means" is not a means-plus-function limitation. ... This recitation of a bearing track and rolling surface bearings in rolling reception in the claim language provides sufficient structure to perform the function of rotational indexing and overcomes the presumption that "rotational indexing means" is a means-plus-function claim limitation. Because this inquiry focuses on the claim language, Cannondale's arguments regarding alleged admissions in the prosecution history that the bearing retainer was required are immaterial in evaluating whether the means-plus-function presumption is rebutted. Moreover, the alleged admissions in the prosecution history did not pertain to claim 1 of the '026 patent, but instead related to a claim in the parent application that recited all three structural elements, including the bearing retainer.

Here, there is no structure in the claims, but, in any event, there are indisputably arguments for patentability in the PTO that required that the claim limitations be construed as governed by §112(f). RTI cites no authority that a patentee can argue §112(f) in the PTO, and then turn around and retract those arguments in court once the patent issued.

### The Prosecution Record Is Not "Ambiguous"

RTI argues that the reexamination histories are less relevant than other evidence, and cannot be considered because ambiguous. (Dkt. 101 at pp. 12 etc.). On the first point, RTI confuses prosecutions which "often lacks the clarity of the specification and thus is less useful for claim construction purposes," with specific arguments and representations made in the PTO, which constitute what is sometimes called "prosecution history disclaimer." A patentee's arguments to overcome the prior art and obtain the patent claims is not only important, but dispositive in light of the authority quoted by Defendants in their Answering Brief (Dkt. 94 at pages 4-6). RTI does not even attempt to distinguish the authority there cited, which clearly states that a patentee's statements in the PTO trump both the specifications and any meaning that would otherwise be understood by one skilled in the art.

RTI argues that "[w]hether and to what extent claim scope has been disavowed is determined, again, through the viewpoint of 'one of ordinary skill in the art,'" citing *Elbex Video, Ltd. v. Sensormatic Electronics Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007). There is nothing in the record of this case, however, that suggests any ambiguity about RTI's plain English statements during the '085 reexamination that the "means" limitations are governed by §112(f) and providing the corresponding structures. Nor is there any ambiguity about RTI's statement distinguishing the prior art.

7333431.2

December 19, 2013
Page 8 of 8

O'KELLY ERNST & BIELLIEN, LLC

   RTI next distorts Defendants' brief and the law by arguing that Defendants rely on "snippets in an appeal brief that Defendants readily admit was 'never lodged with the Board,' i.e., it was never considered." (Dkt. 101 at 13-14). That is incorrect. The practice in the PTO is that appeal briefs are submitted to the PTO, and are considered by the PTO, who must respond to the brief. After the PTO considers the briefs and prepares a response, the briefs are lodged with the Board of Appeals. More importantly, RTI erroneously asserts that the Court must consider whether the Examiner or anyone else considered the RTI's public filings. RTI is wrong, because the law, as stated in Defendants' Answering Brief, is that it does not matter whether a patent applicant's statements were considered, but only that that they were made:

> The fact that the applicant may have given up more than was necessary does not render the disclaimer ambiguous. The analysis focuses on what the applicant said, not on whether the representation was necessary or persuasive: "Regardless of the examiner's motives, arguments made during prosecution shed light on what the applicant meant by its various terms."
>
> *Uship Intellectual Props., LLC v. United States*, 714 F.3d 1311, 1315-16 (Fed. Cir. 2013); *see also Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) ("[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well."); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007).

(Dkt. 93 at 5-6). RTI does not respond to this basic principle, and, thus, claim constructions begin and end with what the patentees stated on the official record to be their invention.

   In addition to being legally irrelevant, RTI errs on the facts in alleging that the PTO allowed the claims based on an "interview." (Dkt. 101 at 14). In fact, the PTO had rejected all the RTI patent claims. (A-223-39). RTI then had an interview, the details of which are sketchy other than that RTI proposed further changes to the claims. (A-371-73). Thereafter, RTI filed a paper that revised the claims and provided "Remarks" (i.e., arguments in support of patentability). (A-249-52). At around the same time, RTI filed its Amended Appeal Brief, together with various declarations. (A-253-348). After the filing of the claim amendments and the Appeal Brief, the PTO allowed the claims, citing the same arguments as were found in the Appeal Brief. (A-363-69).

   Next, RTI erroneously argues that prosecution history disclaimer applies only if patentee had amended the claims, and that claim 1 of the '085 patent was not amended. (Dkt. 101 at 14). RTI is wrong as a matter of law in arguing that an amendment is required to apply disclaimer. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) ("The doctrine of prosecution disclaimer attaches where an applicant, whether by amendment <u>or by argument</u>, unequivocally disavowed a certain meaning to obtain his patent."); *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1330 (Fed. Cir. 2003) ("[T]he doctrine of prosecution disclaimer is inextricably tied to the arguments, amendments <u>or</u> concessions made by the patentee during

7333431.2

prosecution."). RTI is also wrong on the facts. The following is the image of the current claim 1 of the '085 patent, and the italicized words were added during the reexamination:

> 1. A device for routing telephone calls along a least cost route originating from a first telephone to a second telephone having an associated telephone number via a network having a plurality of alternate communication switch paths corresponding to different carriers which can be chosen to route the call and normally providing a current to said first telephone when said first telephone is in use, comprising
>
>> a housing forming an enclosure and comprising first jack means for connection to said first telephone and second jack means for connection to said network
>>
>> switch means operatively connected to said first jack means for disconnecting said first telephone from said network *during routing of a telephone call from said first telephone*,
>>
>> means operatively connected to said switch means for generating a current through said switch means to the first telephone[,] corresponding to a current provided by said network, *when the first telephone is disconnected from said network by said switch means*,
>>
>> database means for storing billing rate parameters for determining a least cost communication path for call corresponding to said telephone number,
>>
>> means operatively connected to said switch means for detecting and storing said telephone number originating from the first telephone,
>>
>> means for addressing said database means for identifying a plurality of communication switch paths to said second telephone and the cost rate of each path,
>>
>> means *actuated subsequent to the detection of said telephone number originating from said first telephone* for comparing the cost rate of each path so as to determine a least cost route, and
>>
>> means operatively connected to said switch means and said second jack means for generating a number sequence corresponding to a desired carrier so that said call is routed through said second jack means to the selected communication path and carrier to establish a switched connection between said first telephone and said second telephone phone.

At Dkt. 101 p. 15, RTI asserts that claim terms are construed more broadly in the PTO than they are in a Court proceeding. That is correct, but irrelevant. No authority supports the conclusion that patentees' narrowing amendments and arguments in the PTO can be ignored. In fact, such arguments are given more effect in court than in the PTO because claims are interpreted more broadly in the PTO.

7333431.2

### RTI Further Errs In Arguing That Skill In the Art Constitutes Structure

RTI next argues "Classes of Logic Known to the Artisan and Described in the Claims and Specification are Structure" and that "logic" is an "algorithm" which is a recognized form of structure. (Dkt. 101 at 17). RTI said in its opening brief that an "algorithm" can be a structure, and the algorithm can be "a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." However, that algorithm must still be a "sufficient structure" and must be found in the specification. "Logic" is not an algorithm. RTI's citation to *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003), is misleading. (Dkt. 101 at 17). That case, again, did not involve a "means" limitation, and the issue was whether the term "a programmed logic circuit" was sufficiently definite to avoid §112(f) treatment. Nothing in the case suggests that "logic" is a structure that meets the requirements of §112(f), and certainly does not meet the statutory requirement when the "logic" is not defined in the patent specification. The other case cited by RTI, *Aristocrat Technologies Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (Dkt. 101 at 17), also contradicts RTI's position. The Federal Circuit invalidated the "means" claims in that case on the same bases that apply here. Specifically, the Federal Circuit recognized that one skilled in the art could understand and practice the claimed invention, but invalidated the claims because the specification did not disclose specific algorithms or other structures:

> Aristocrat also argues that, even if there is no disclosure of an algorithm in the patent, the disclosure of a microprocessor with "appropriate programming" is a sufficient disclosure of structure for means-plus-function purposes, because the evidence showed that one of ordinary skill in the art could build the device claimed in the '102 patent based on the disclosure in the specification. That argument, however, conflates the requirement of enablement under section 112 paragraph 1 and the requirement to disclose the structure that performs the claimed function under section 112[f].
>
> Although the examples given in the '102 patent might enable one of ordinary skill to make and use the invention, they do not recite the particular structure that performs the function and to which the means-plus-function claim is necessarily limited.
>
> Whether the disclosure would enable one of ordinary skill in the art to make and use the invention is not at issue here. Instead, the pertinent question in this case is whether Aristocrat's patent discloses structure that is used to perform the claimed function. ... A section 112[f] disclosure, however, serves the very different purpose of limiting the scope of the claim to the particular structure disclosed, together with equivalents. ....

*Artistocrat*, 521 F.3d at 1336. The Court in *Aristocrat* also contradicted RTI' argument that all the Court must accept Walton's opinions. As in *Aristocrat*, RTI is citing Walton for the proposition that one skilled in the art would somehow know the structure of a "means" element. But, this is directly contrary to the law:

> In *Atmel*, it was not the fact that one skilled in the art was aware of known circuit techniques that resulted in a conclusion that sufficient structure was recited. ... Expert testimony was used to show what the title of the article would convey to one skilled in the art—in this case it was the "precise structure of the means recited in the specification." ... <u>The expert's testimony did not create or infer the structure.</u>

*Artistocrat*, 521 F.3d at 1337. In other words, an expert can point to a structure in the specification that corresponds to the "means" and opine on whether that structure in the specification sufficiently discloses a recognizable structure that can perform the function of the "means." However, the "expert" cannot argue that the "means" structure is a logic that a skilled artisan would know.

### RTI's Other Errors With Respect to *Mediacom*

RTI continues its legal errors in conjunction with specific claimed elements. The errors will be addressed in the course of the hearing on December 27. However, with respect to RTI's request that the Court ignore the *stare decisis* of the Mediacom decisions, and its challenge to the logic of the earlier Court's conclusions, Defendants add one general observation and two specific points.

RTI waived its arguments against *Mediacom*, because the arguments were not included in RTI's opening brief. RTI cannot ignore *stare decisis* and its obligations to present its arguments in a fair and complete opening brief. Not only waived, but Walton did not address *Mediacom* in his declaration. Thus, even though RTI asks the Court to substitute Walton's opinions for the reasoned judgment of *Mediacom*, Walton's declaration is of no value in supporting any construction contrary to the *Mediacom* decisions, because Walton never saw or considered the decisions. In other words, RTI presents too little too late.

At pages 25-27, RTI argues for the first time that the Court should not follow the *stare decisis* of the prior judicial claim construction of the term "disconnecting" in *Mediacom*. Defendants adopted the claim construction of this limitation in the *Mediacom* case. (Dkt. 93 at 22-23). RTI says that the court should follow Walton's opinions. However, Walton neither read the *Mediacom* decisions nor considered the prosecution of the '085 reexamination. A declaration based on incomplete information is worthless. RTI then asserts that *Mediacom* was wrong in view of a subsequent statement RTI made during the reexamination proceeding:

> The "switch means" consists of one or more switches for controlling a circuit so that one state or position permits signaling between the originating telephone and the network and a second state or position ***disables signaling*** between the originating telephone and the network. In other words, the switch means is a mechanism for isolating the telephone addressing ***signals*** (i.e., the number dialed) from the telephone network.

7333431.2

O'KELLY ERNST & BIELLIEN, LLC

December 19, 2013
Page 12 of 12

(Dkt 101 at p. 27, citing A-68). Yet, the above statement cited by RTI is completely consistent with *Mediacom's* and Defendants' construction of the "disconnecting" term:

> Interruption of the electrical circuit between the telephone and the network -- the breaking or opening -- of the electrical circuit between the telephone jack and the network.

Nothing in RTI's arguments supports its proposed construction: "disconnecting the communication such as signaling." Nor does RTI's proposed construction make sense when it defines "disconnecting" as "disconnecting" and then introduces even more ambiguity by adding a "such as" term.

RTI also fails to present any supportable challenge to this Court following the *stare decisis* of Mediacom in construing the first limitation of claim 1 of the '769 Patent:

> connecting at a predetermined time and date via a data transfer line the call rating device to a rate provider having billing rate parameters for a plurality of calling stations…

RTI argued in its opening brief that the term required no construction. (Dkt. 84 at 18-19). Defendants pointed to the claim construction of this limitation in the *Mediacom* case, and adopted that prior construction. (Dkt. 93 at 31-32). RTI replied, and attempted – for the first time in the reply – to explain why they thought the prior judicial construction was in error.

Thus, even if not waived, one can accept RTI's and Walton's arguments that the requirement for connecting at a predetermined time and date reflected the need to balance loads at the call rating service. That argument does not address the point of the prior construction, which was to define in a way a jury could understand what was meant by "predetermined" in the context of this patent, and declared that "predetermined" meant "the time and date for calling the rate provider are selected a substantial period in advance of the call." Thus, the Court construed "predetermined" in a functionally useful way that comports completely with the need to stagger calls by a call rating device to the call rating service to avoid unbalanced load from too many call at a particular time.

Defendants look forward to addressing these and other issues, and responding to any questions of the court, at the hearing on December 27.

Respectfully Submitted,

*/s/ George Pazuniak*

George Pazuniak

7333431.2

O'KELLY ERNST & BIELLIEN, LLC

cc:   Clerk of the Court (via ECF)
       Counsel of Record (via ECF)

7333431.2