UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

RATES TECHNOLOGY INC.,

                 **Plaintiff,**

           **- against -**

BROADVOX HOLDING COMPANY, LLC,
CYPRESS COMMUNICATIONS
OPERATING COMPANY, LCC, AND ABC
COMPANIES, 1 TO 10,

                 **Defendants.**

----------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/6/14

**OPINION AND ORDER**

**13 Civ. 0152 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION[1]

      Rates Technology Inc. ("RTI") brings this action against Broadvox

Holding Company, LLC ("Broadvox Holding"), its named subsidiary, Cypress

Communications Operating Company, LLC ("Cypress," and with Broadvox

Holding, "Defendants"), and its unnamed subsidiaries or corporate affiliates, ABC

Companies 1 to 10, for patent infringement.[2]  Broadvox Holding moves to dismiss

---

[1]     This Court has jurisdiction over this patent infringement action under
28 U.S.C. §§ 1331 and 1338(a).

[2]     *See* First Amended Complaint ("FAC") ¶ 6.

for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure

("Rule") 12(b)(2).[3]  Defendants also move for sanctions against RTI and its

attorneys on the grounds that filing the Amended Complaint violates Rule 11.  For

the following reasons, both motions are DENIED.

## II.    BACKGROUND[4]

Broadvox Holding is private holding company organized under

Delaware law with a principal place of business in Ohio.[5]  Cypress is a Delaware

limited liability corporation with a principal place of business in Georgia.[6]  ABC

Companies 1 to 10 are corporate subsidiaries or affiliates of Broadvox Holding.[7]

Through its subsidiaries, Broadvox Holding provides IP-based information

services to approximately three hundred wholesale carriers, businesses, and

enterprise retail customers in New York and throughout the United States.[8]

---

[3]      Defendants have withdrawn their Rule 12(b)(6) motion to dismiss.
*See* Doc. No. 98.

[4]      The following facts are drawn from the First Amended Complaint and
the parties' submissions on the pending motions, including affidavits and exhibits.

[5]      *See* FAC ¶ 2.

[6]      *See id.* ¶ 3.

[7]      *See id.* ¶ 4.

[8]      *See* Merger Application of Broadvox Holding and Cypress ("Merger
Application"), Ex. B to the Declaration of Tal S. Benschar at 3-4.

2

Specifically, Broadvox Holding, through its subsidiaries, operates a VoIP network in New York, which is among its top ten retail markets.[9]

RTI, a Delaware company, owns several patents in the telecommunications field, including the two telecommunications patents at issue, United States Patent No. 5,425,085 (the "085 Patent") and United States Patent No. 5,519,769 (the "769 Patent").[10]  Both patents cover inventions related to the automatic routing of telephone calls based on cost.[11]

RTI alleges that (1) defendants' "systems and methods performed in those systems" directly infringe the '769 Patent; and that (2) the systems use a "device" that directly infringes the '085 Patent.[12]

## III.  LEGAL STANDARD

### A.  Rule 12(b)(2) Motion to Dismiss

District courts employ Federal Circuit law in assessing personal jurisdiction over patent claims.[13]  On a motion to dismiss for lack of personal

---

[9]   *See* FAC ¶ 8; Merger Application at 11.

[10]   *See* FAC ¶¶ 11, 19.

[11]   *See id.*

[12]   *Id.* ¶¶ 13, 21.

[13]   *See Grober v. Mako Prods. Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012); *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002).

jurisdiction, the plaintiff bears the burden of showing personal jurisdiction.[14] "[W]here the district court's disposition as to the personal jurisdiction question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction."[15]  "When analyzing this showing after a motion to dismiss, the district court must accept uncontroverted allegations in plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor."[16]

### 1.    Personal Jurisdiction

The test for personal jurisdiction in the Federal Circuit mirrors the one employed by the Second Circuit.[17]  Under the test, "[f]ederal courts are to apply the personal jurisdiction rules of the forum state."[18]  There are two types of

---

[14]    *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012) ("[T]he burden of establishing personal jurisdiction ordinarily falls on the plaintiff . . .").

[15]    *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1292 (Fed. Cir. 2009) (citing *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)).

[16]    *Grober*, 686 F.3d at 1345 (internal citations omitted).

[17]    *See JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, No. 12 Civ. 5847, 2013 WL 713929, at *4 (E.D.N.Y. Feb. 28, 2013); *Steuben Foods, Inc. v. Oystar Grp.*, No. 10 Civ. 780S, 2013 WL 2105894, at *1 (W.D.N.Y. May 14, 2013).

[18]    *Penguin Grp. (USA) Inc. v. American Buddha* ("*Penguin I* "), 609 F.3d 30, 35 (2d Cir. 2010).

personal jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction."[19]

   *First,* the court determines if it has general jurisdiction over the defendant.  Under section 301 of the New York Civil Practice Law and Rules ("CPLR"), a foreign corporation is subject to general jurisdiction if it is "doing business" in New York.[20]  To meet this standard, the foreign corporation must be "do[ing] business in New York not occasionally or casually, but with a fair measure of permanence and continuity."[21]  The plaintiff "must show that a defendant engaged in continuous, permanent, and substantial activity in New York."[22]  "Factors considered include (1) the existence of an office in New York, (2) the solicitation of business in the state, (3) the presence of bank accounts and other property in the state, and (4) the presence of employees of the foreign

---

   [19] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

   [20] *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (citing N.Y. C.P.L.R. § 301).

   [21] *Schultz v. Safra Nat. Bank of New York*, 377 Fed. App'x 101, 102 (2d Cir. 2010) (citing *Wiwa*, 226 F.3d at 95).

   [22] *Gosain v. State Bank of India*, 414 Fed. App'x 311, 314 (2d Cir. 2011) (citing *Wiwa*, 226 F. 3d at 95).

defendant in the state."[23]

        If general jurisdiction is not satisfied, the court determines if specific jurisdiction exists.  Under Section 302(a) of the CPLR, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent (1) transacts any business within the state . . . , (2) commits a tortious act within the state . . . , or (3) commits a tortious act without the state causing injury to person or property within the state . . . ."[24]  A court exercises specific jurisdiction over a foreign defendant only "where the claim arises out of, or relates to, the defendant's contacts with the forum."[25]

        *Second*, if personal jurisdiction exists, the court decides whether the exercise of personal jurisdiction comports with constitutional due process.[26]  In a patent infringement case, "when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional

---

[23]     *Saudi v. Marine Atlantic, Ltd.*, 306 Fed. App'x 653, 655 (2d Cir. 2009).

[24]     N.Y. C.P.L.R. § 302(a).

[25]     *Licci ex rel. Licci v. Lebanese Canadian Bank SAL* ("*Licci VI*"), 732 F.3d 161, 170 (2d Cir. 2013).  *Accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (for the proper exercise of specific jurisdiction, the defendant must have "purposefully directed" his activities at the forum and the litigation must "arise out of or relate to" those activities).

[26]     *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

6

circuit law, applies."[27]  As set forth by the Supreme Court in *International Shoe v. Washington*, due process requires that a defendant "not present within the territory of the forum" have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[28]

"Even where a party has been shown to have minimum contacts with the forum state, these contacts 'may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice,' *i.e.*, whether exercising jurisdiction would be reasonable."[29]  Such relevant factors include:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.[30]

Where a defendant who has purposefully directed its activities at the forum state

---

[27]    *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1409-10 (Fed. Cir. 2009).

[28]    326 U.S. at 316 (internal citations omitted).

[29]    *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (quoting *Burger King*, 417 U.S. at 476)).

[30]    *Id.* (citing *Burger King*, 417 U.S. at 476-77).

seeks to defeat jurisdiction, it must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[31]

## 2. Activities of a Subsidiary

Under certain circumstances, a court may assert jurisdiction over a foreign parent corporation based on the activities of its subsidiaries in New York.[32] Specifically, the subsidiary must be either an "agent" or a "mere department" of the foreign parent.[33]

Under agency theory, "[t]he parent-subsidiary relationship is enough to give rise to a strong inference of a broad agency relationship."[34]  To establish agency, "a plaintiff need demonstrate neither a formal agency agreement, nor that the defendant exercised direct control over its putative agent."[35]  However, the plaintiff must show that the subsidiary "renders services on behalf of the foreign [parent] corporation that go beyond mere solicitation and are sufficiently important

---

[31]  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) (internal citation omitted).

[32]  *See Wiwa*, 226 F.3d at 95.

[33]  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).

[34]  *Airtran New York, LLC v. Midwest Air Grp.*, 844 N.Y.S.2d 233, 241 (1st Dep't 2007).  *Accord Bellomo v. Pennsylvania Life Co.*, 488 F. Supp. 744, 746 (S.D.N.Y. 1980).

[35]  *Wiwa*, 226 F.3d at 95.

to the foreign entity that the corporation itself would perform equivalent services if no agent were available."[36]  Thus, the subsidiary's activities must be of "meaningful importance" to the parent.[37]  Moreover, "[t]he agent must be primarily employed by the defendant and not engaged in similar services for other clients."[38]

Where the parent is a holding company, New York courts distinguish between two types:

> Where a holding company is nothing more than an investment mechanism — a device for diversifying risk through corporate acquisitions — the subsidiaries conduct business not as its agents but as its investments. The business of the parent is the business of investment, and that business is carried out at the parent level. Where, on the other hand, the subsidiaries are created by the parent, for tax or corporate finance purposes, to carry on business on its behalf, there is no basis for distinguishing between the business of the parent and the business of the subsidiaries.[39]

Thus, when considering the agency issue, courts consider "whether subsidiaries are carrying out their own business or that of the parent."[40]

---

[36]    *Id.*

[37]    *Id.* at 96.

[38]    *Id.* at 95.

[39]    *Bellomo*, 488 F. Supp. at 746.  *Accord Porter v. LSB Indus., Inc.*, 600 N.Y.S.2d 867, 874 (4th Dep't 1993).

[40]    *Ginsberg v. Government Props. Trust. Inc.*, No. 07 Civ. 365, 2007 WL 2981683, at *7 (S.D.N.Y. Oct. 10, 2007).

### B.     Rule 11 Sanctions

In patent cases, the court applies the law of the regional circuit to determine compliance with Rule 11.[41]  In the Second Circuit, a pleading, motion, or other paper violates Rule 11 when it is submitted for "any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."[42]

The Supreme Court has cautioned that Rule 11 "must be read in light of concerns that it will . . . chill vigorous advocacy."[43]  Thus, "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable" courts must "resolve all doubts in favor of the signer of the pleading."[44]  Sanctions should be imposed only "where it is patently clear that a claim has absolutely no

---

[41]     *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1367 (Fed. Cir. 2012) ("In reviewing a district court's decision to deny Rule 11 sanctions, we apply the law of the regional circuit.").

[42]     *Watkins v. Smith*, No. 12 Civ. 4635, 2013 WL 655085, at *5 (S.D.N.Y. Feb. 22, 2013) (citing *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)).

[43]     *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

[44]     *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

chance of success."[45]

In deciding a Rule 11 motion, a district court "must adhere to the procedural rules which safeguard due process rights."[46]  Rule 11 requires that a motion for sanctions "be made separately from any other motion and . . . describe the specific conduct that allegedly violates Rule 11(b)."[47]  In addition, once the motion is served on the opposing party, "[the motion] must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."[48]  This "safe harbor provision" gives parties threatened with sanctions "the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed."[49]  "A motion that fails to

---

[45]    *Libraire v. Kaplan*, 395 Fed. App'x 732, 736 (2d Cir. 2010) (internal citations omitted).

[46]    *Castro v. Mitchell*, 727 F. Supp. 2d 302, 305 (S.D.N.Y. 2010) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir. 2000)). *Accord Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51-52 (2d Cir. 2008).

[47]     Fed. R. Civ. P. 11(c)(2).

[48]    *Id.*

[49]    *Castro*, 727 F. Supp. 2d at 306 (citing *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003)).

11

comply with the safe harbor provision of Rule 11 must be denied."[50]

## IV.   DISCUSSION

### A.   Rule 12(b)(2) Motion to Dismiss

To establish general jurisdiction, RTI must show that Broadvox Holding or its agent is "doing business" in New York.[51]   RTI argues that Broadvox Holding is subject to jurisdiction in New York based not on its own activities, but on those of its subsidiaries, including Cypress,[52] who are "doing business" here as its agents.[53] Thus, personal jurisdiction over Broadvox Holding is premised on agency theory.

Broadvox Holding contends that "[i]t is simply a parent of independent, operational holding companies," and that "[i]ts only business is to own the membership interests of other companies, including various operating entities."[54]   But the documents submitted by RTI suggests that Broadvox Holding

---

[50]      *Id.* (citing *Fierro v. Gallucci*, 423 Fed. App'x 17, 19 (2d Cir. 2013). *Accord Williamson*, 542 F.3d at 51; *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002) (reversing imposition of Rule 11 sanctions because "appellees did not serve their [Rule 11] motion on Perpetual prior to filing it with the court").

[51]      *Wiwa*, 226 F.3d at 95.

[52]      Cypress has waived the defense of lack of personal jurisdiction and answered the First Amended Complaint on the merits.  *See* Doc. No. 112.

[53]      *See* Plaintiff's Memorandum in Opposition to Motions to Dismiss at 8-16.

[54]      Declaration of Peter Sandrev in Support of Motion by Broadvox Holding to Dismiss for Lack of Personal Jurisdiction ¶ 5.

is more than just an "investment mechanism [that] diversif[ies] risk through corporate acquisitions."[55]  Instead, it is in the same business as its subsidiaries — providing IP-based communication services to customers.

Specifically, the record demonstrates that Broadvox Holding (1) holds 100% ownership of its subsidiaries,[56] (2) "operates through its subsidiaries,"[57] (3) and "owns and operates its own switches, routers, servers, and other network equipment."[58]  Unlike Cypress's former parent, Arcapita, which was not a "communications service provider" but was strictly interested in "investment," "Broadvox [Holding] and its current subsidiaries are established providers of IP-based services to wholesale and business customers."[59]  Thus, Cypress and the other subsidiaries "carry on business on [Broadvox Holding's] behalf" by maintaining and operating its telecommunications equipment and servicing Broadvox customers in New York.[60]  Given the importance of its subsidiaries'

---

[55]    *Bellomo*, 488 F. Supp. at 746.

[56]    *See* Exhibit D to Merger Application (chart showing Broadvox Holding's corporate structure).

[57]    *Id.* at 3.

[58]    *Id.* at 4.

[59]    *Id.* at 10.

[60]    *Bellomo*, 488 F. Supp. at 746 (asserting personal jurisdiction based on agency theory over "a holding company, a corporate shell [that] does not conduct

activities in New York — one of its "top ten retail markets" — it is fair to say that

Broadvox Holding would perform these functions if no agent were available.[61]

Broadvox Holding responds that RTI has failed to prove that

"Broadvox [Holding]'s subsidiaries are financially dependent on [it], that [it]

interferes with the selection of the subsidiaries' executive personnel, that [its]

subsidiaries fail to observe corporate formalities, or that [it] asserts any degree of

control over its subsidiaries' operations."[62]  But these factors pertain to the "mere

department" theory of jurisdiction, and are irrelevant to the agency analysis here.[63]

Accordingly, on the limited record before me, I find that the RTI has established a

*prima facie* case that Broadvox Holding's subsidiaries are doing business in New

_____

business directly, but only through its subsidiaries.").

[61]     *See* Merger Application at 11.  *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 376, 386 (S.D.N.Y. 2002) (finding that subsidiary that conducts "core business on behalf"of holding company is its agent).

[62]     *See* Reply Memorandum of Law in Further Support of the Defendants' Motion to Dismiss the Amended Complaint at 9-10.

[63]     *See Jazini*, 148 F.3d at 184-85 (To determine whether subsidiary is a "mere department" of the parent, courts consider [1] "common ownership . . .," [2] "financial dependency of the subsidiary on the parent corporation," [3] "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities," and [4] "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent.").

York as its agents.[64]

       Finally, exercising jurisdiction over Broadvox Holding satisfies due

process.  As explained above, Broadvox Holding's contacts with New York are not

insubstantial.  Through Cypress and its other subsidiaries, it directly serves the IP-

based communications market in New York.[65]  In fact, Broadvox Holding acquired

Cypress in order to better compete in the information services market in New

York.[66]  In exchange, Broadvox Holding provides Cypress with its "financial,

technical, and managerial resources."[67]  Because Broadvox Holding purposefully

directed its business toward New York, it must make a "compelling case that the

---

[64]    *See Medical Solutions, Inc. v. C Change Surgical, LLC*, 541 F.3d 1136, 1140 (Fed. Cir. 2008) ("Absent discovery on the issue of personal jurisdiction, [plaintiff] was required 'only to make a prima facie showing' of jurisdiction  to defeat [defendant's] motion to dismiss.") (internal citations omitted).  I do not reach the issue of specific jurisdiction as I have already found that Broadvox Holding is subject to general jurisdiction in this Court.

[65]    *See* Merger Application at 4, 6, 11.  *See also SEB S.A. v. Montgomery Ward & Co., Inc.*, No. 99 Civ. 9284, 2002 WL 31175244, at *4 (S.D.N.Y. Oct. 1, 2002) (holding that exercising jurisdiction over holding company whose subsidiary was its "agent" did not offend due process); *Newport Components, Inc. v. NEC Home Elecs. (U.S.A.), Inc.*, 671 F. Supp. 1525, 1535 (C.D. Cal. 1987) (It is "well settled . . . that where a nonresident parent corporation carries on 'continuous and systematic' activities in the forum state through a subsidiary, due process is not offended by the exercise of personal jurisdiction over the parent entity.") (internal citations omitted).

[66]    *See* Merger Application at 10-11.

[67]    *Id.* at 10.

presence of some other considerations would render jurisdiction unreasonable."[68]
It has failed to do so.

Although Broadvox Holding might be inconvenienced by litigating here and the alleged patent infringement is not particular to New York, Broadvox Holding runs a vast nationwide network of IP-based communication services.[69]  It has access to resources necessary to try a case here.  It has relationships with New York law firms and faces no language barrier.[70]  Accordingly, exercising personal jurisdiction over Broadvox Holding would not offend due process.

### B.    Rule 11 Motion for Sanctions

Defendants have moved for sanctions against RTI and its counsel under Rule 11.  Defendants argue that (1) RTI filed suit without any objectively reasonable basis for alleging patent infringement, and (2) RTI failed to properly construe elements of its claims at issue.[71]

Regardless of the merits of the motion, defendants' failure to comply

---

[68]    *Breckenridge*, 444 F.3d at 1362.

[69]    *See* Merger Application at 1-2.

[70]    *See Wiwa*, 226 F.3d at 99; *SEB S.A.*, 2002 WL 31175244, at *4.

[71]    *See* Defendants' Memorandum of Law in Support for Sanctions Under Rule 11 of the Federal Rules of Civil Procedure ("Broadvox Sanctions Mem.") at 1-2, 13.

with Rule 11's safe harbor requirement bars any award of sanctions.[72]  Under the requirement, the moving party must serve the motion on its adversary at least 21 days before filing with the court.[73]  The Second Circuit has held that "the filing of an amended pleading resets the clock for compliance with the safe harbor requirements of Rule 11(c)(2) before a party aggrieved by the new filing can present a sanctions motion based on that pleading . . . ."[74]  Here, defendants allegedly served RTI with their first motion for sanctions — directed at the original Complaint — on January 23, 2012.[75]  RTI filed the First Amended Complaint on March 4, 2013, thereby resetting the clock for defendants' compliance with the safe harbor period.[76]  Thus, regardless of whether they actually served their first motion,[77] defendants were required to serve RTI with their new sanctions motion

---

[72]    *See Williamson*, 542 F.3d at 51(affirming district court's denial of Rule 11 motion where defendants "failed to make a separate motion for sanctions under Rule 11"); *Perpetual Sec., Inc.*, 290 F.3d at 142.

[73]    *See* Fed. R. Civ. P. 11(c)(2).

[74]    *Lawrence v. Richman Grp. of CT, LLC,* 620 F.3d 153, 158 (2d Cir. 2010).

[75]    *See* Broadvox Sanctions Mem. at 7 (citing 1/23/13 Letter from George Pazuniak to Milton Springut and Tal S. Benschar, Ex. K to the Declaration of George Pazuniak in Support of Defendants' Motion for Sanctions, at 4).

[76]    *See* FAC.

[77]    A review of the docket shows no certificate of service for the first motion for sanctions.

— directed at the First Amended Complaint — twenty-one days before the July 11, 2013 filing.[78]  Neither defendants' informal communications with RTI, nor their pre-motion letter to the Court substitutes for serving the motion as required by Rule 11.[79]  Moreover, because RTI conducted a pre-suit investigation to ascertain information about defendants' system and found that infringement may exist, it should not be sanctioned for filing suit and seeking discovery to confirm its suspicion.[80]  Therefore, defendants' motion must be denied.[81]

## VI.  CONCLUSION

---

[78]  *See* 7/11/13 Motion for Sanctions Under Rule 11, Doc. No. 57.

[79]  *See Star Mark Mgmt., Inc . v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("[A]n informal warning in the form of a letter without service of a separate Rule 11 motion" does not satisfy Rule 11's procedural requirements); Fed. R. Civ. P. 11 Advisory Committee's Note ("To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, . . . the 'safe harbor' period begins to run *only upon service of the motion*.") (emphasis added)).

[80]  *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1364 (Fed. Cir. 2000) (Although [plaintiffs] "could have assumed non-infringement" when "[a]t the end of [plaintiffs'] pre-suit investigation [they] had neither evidence of infringement nor non-infringement . . . , that they chose to file suit and engage in discovery instead does not subject them to sanctions.").  *Accord K-Tech Telecommunic'ns v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) ("A defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible.").

[81]  Because Broadvox Holding's failure to comply with the safe harbor requirement alone merits denial of its Rule 11 motion, the Court need not rule on RTI's Motion for a Protective Order.  *See* Doc. No. 71.

18

For the foregoing reasons, Broadvox Holding's motion to dismiss and the motion for sanctions are both denied. RTI's motion for a protective order is moot. The Clerk of the Court is directed to close these motions [Docket Nos. 30, 57, and 71].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 6, 2014.

19

**- Appearances -**

**For RTI:**

Milton Springut, Esq.
Tal S. Benschar, Esq.
Springut Law PC
75 Rockefeller Plaza
New York, NY 10019
(212) 813-1600

Scott Spencer, Esq.
Scott Spencer Law
75 Rockefeller Plaza
New York, NY 10019
(646) 535-4336

**For Broadvox Holding:**

Keith D. Nowack, Esq.
Andriy Roman Pazuniak, Esq.
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005
(212) 732-3232

George Pazuniak, Esq.
Pazuniak Law Office LLC
216 Sorrel Drive
Wilmington, DE 19803
(302) 478-4230

Alexander Gertsburg, Esq.
Law Office of Alexander Gertsburg
8210 Macedonia Commons Blvd., Suite
68 - Pmb 151
Macedonia, OH
(216) 373-4811